IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA,
PANAMA CITY DIVISION

LEMUEL MCMILLAN,

    Plaintiff,

v.                                          CASE NO. 5:13-cv-292 WS-GRJ

STATE OF FLORIDA, DEPARTMENT OF
CORRECTIONS, SAM CULPEPPER,
RICHARD COMERFORD, DONNIE G.
MAURER and RICARDO HAY.

    Defendants.
_____/

## DEPARTMENT OF CORRECTIONS' RESPONSE TO MOTION TO EXCLUDE DEFENDANTS' PROPOSED REBUTTAL EXPERTS

    Florida Department of Corrections (DOC), through undersigned counsel, and pursuant to N.D. Fla. Loc. R. 7.1(c)(1), files this response to plaintiff's Motion to Exclude Defendants' Proposed Rebuttal Experts and to Prohibit Defendants From Offering Expert Testimony and states:

    1.  This court entered its Fifth Amended Scheduling Order (fifth scheduling order) on June 18, 2015 (with clarification on June 22, 2015). Discovery cut off (including responses to written discovery) is currently scheduled on August 31, 2015.

    2.  The identity of plaintiff's expert witness, Ron McAndrew, was disclosed to DOC on May 18, 2015, along with the expert's report (the McAndrew report).

    3.  According to the fifth scheduling order, the DOC's rebuttal expert witness disclosure was to occur within 30 days after plaintiff's expert disclosure.

    4.  On June 19, 2015, by email, undersigned disclosed to plaintiff's counsel the name of

1

DOC's anticipated expert rebuttal witness, Max Linn, Ph.D., and further noted that his opinion would contradict or rebut evidence in a specific part of the McAndrew report. *See,* Fed.R.Civ.P. 26(a)(2)(D)(ii).  In particular, the email provided that Dr. Linn "is an expert statistician, and his testimony is anticipated to relate to the methodology by which the data underlying Mr. McAndrew's report  was collected and evaluated, and the opinions associated with that data." [1]

5.   Accordingly, disclosure of the identity and subject matter of the DOC rebuttal expert was made in a timely manner to plaintiff (albeit on the 31st day after plaintiff's disclosure). Subsequently, the rebuttal expert's final report (the Linn rebuttal report) was disclosed to plaintiff's counsel on August 24, 2015.[2]

6.   In lieu of requesting an agreed date for deposition of Dr. Linn after August 31 plaintiff's counsel chose to file the instant motion with four hours' email notice to undersigned and without any attempt to confer.  There had been no discussion about Dr. Linn, his anticipated report publication date or his deposition before plaintiff abruptly filed the motion.

7.   The scope of the Linn rebuttal report is restricted to an examination of the same source materials utilized by plaintiff's expert as a basis for his key opinions, and a rebuttal of those opinions as statistically unsound.   Accordingly, neither the subject area nor the conclusions reached in the Linn rebuttal report can come as any surprise to plaintiff.

---

[1]  Plaintiff's expert, McAndrew, relies on specific source materials including four annual reports, published by the Bureau of Justice Statistics (BJS) within the US Department of Justice, reporting certain statistical information about the nationwide incidence of sexual victimization in prisons during given years.  These reports form the basis for several key opinions provided in the McAndrew report.

[2]  As set forth more fully herein, although undersigned first identified and contacted Dr. Linn about consulting with the DOC as a rebuttal expert as early as two weeks after receipt of the McAndrew report, an unavoidable 6 week delay ensued before Dr. Linn was approved to begin work.  Once Dr. Linn was under contract, he worked diligently to complete his evaluation in a timely fashion.

2

8.   As more fully explained below, it is vital to the DOC's defense of this action to rely on the expert rebuttal provided by Dr. Linn.  Excluding his report and testimony is unduly prejudicial to the DOC and an overly harsh remedy.

ADDITIONAL BACKGROUND

9.   In addition to its discovery cut off, the fifth scheduling order also included a specific range of dates for a second and third round of depositions in July and August.  This was clearly contemplated by the parties to include expert depositions (*see e.g.,* Second Joint Motion for Modification of the Fourth Amended Scheduling and Case Mgmt Order, at paragraphs 6 and 7) [DE 127].

10.   During these second and third rounds of depositions, plaintiff deposed  nine former or current employees of DOC.

11.   In contrast, plaintiff refused to produce for deposition the sole witness requested by DOC:  plaintiff's expert.  Despite having several specially set deposition dates, plaintiff did not make his expert available for deposition during that time, nor has plaintiff offered any alternative deposition dates before the discovery deadline.  Even if plaintiff is prejudiced by defendant's admittedly delayed publication of the Linn rebuttal report, defendant is equally prejudiced by plaintiff's obstructionist conduct.

12.    It is critical to the DOC's defense to be able to depose plaintiff's expert.  In addition to the statistical opinion mentioned above, the McAndrew report contains 80+ separately numbered opinions covering an extraordinarily broad range of other subjects. [3]

---

[3]  These opinions include, among others, that  investigations of inmate complaints at Northwest Florida Reception Center in Chipley (NWFRC) over a 5 year period were absent or inadequate; that the frequency of certain kinds of inmate complaints was too high; that the DOC took

13. Plaintiff's expert opines that virtually every aspect of the management and operation of the Northwest Florida Reception Center for a 5 year period between 2004 and 2009 evinces a pattern of deliberate indifference to the harm facing inmates, and further opines that this deliberate indifference lead directly to the incident involving plaintiff and former- employee Ricardo Hay.

14. Should DOC be prevented from taking plaintiff's expert's deposition because of plaintiff's foot-dragging, the DOC's ability to rebut that opinion will be severely undermined, and its defense of this matter likewise compromised. As with exclusion of the rebuttal expert's opinion, it would be unduly prejudicial to the DOC should the court refuse to allow DOC to take a deposition of plaintiff's expert after cut-off.

15. As a final point, there has been no trial date set in this matter. DOC submits that there is sufficient time for each of the parties to prepare for a deposition of the other's expert. And although there has been no formal request yet, DOC will seek an extension of the court's deadline in order to complete expert discovery.

**MEMORANDUM**

Rule 26 imposes specific disclosure requirements upon any witness "who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B); *Prieto v. Malgor*, 361 F.3d 1313, 1317 (11th Cir. 2004). Each expert witness must provide a written report with "a

---

retaliatory employment action against staff who reported abuse against inmates and promoted those who actively abused inmates; that the DOC failed to train its staff; that the DOC failed to ensure adequate video coverage of the entire facility; that the DOC failed to provide an adequate grievance process for inmates to complain; and that DOC has completely failed to comply with its own reporting procedures as well as those set forth in the Prison Rape Elimination Act.

complete statement of all opinions to be expressed and the basis and reasons therefor," information about the data considered, the expert's qualifications, any compensation earned, and any other recent cases where testimony was offered. *Id*.

Rule 37 offers a remedy mechanism for those who are harmed by noncompliance with Rule 26. It states that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Other sanctions may be imposed in lieu of expert disqualification, such as expenses or an ability to inform the jury of a party's failure. *Id*. But as the Rule states, sanctions are only appropriate without a substantial justification for the failure to disclosure or any harm to the opposing party. A substantial justification and a lack of harm to plaintiff are both present here.

When determining if nondisclosure of evidence is "substantially justified or harmless," courts have applied the following test:

> In determining whether to sanction a party and exclude the party's expert witness evidence, courts have looked to the following four factors as instructive: (1) prejudice to the opposing party; (2) ability of that party to cure the prejudice; (3) the extent to which the expert testimony would disrupt or delay the orderly and efficient progression of the case; and (4) bad faith or willfulness in failing to comply with the court's order.

*NAACP v. Florida Dep't of Corr.*, 2002 WL 34708021, at *1 (M.D. Fla. May 6, 2002); see also, *Two Men & a Truck Int'l, Inc. v. Residential & Commercial Transp. Co., LLC*, 2008 WL 5235115, at *2 (N.D. Fla. Oct. 20, 2008) ("(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."); see also, *Bush v.*

*Gulf Coast Elec. Co-op.*, 2015 WL 3422336, at *4 (N.D. Fla. May 27, 2015) (in deciding whether to exclude a non-expert witness, "the court must consider three factors: '(1) the importance of the testimony; (2) the reason for the [plaintiff's] failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness ... [is] allowed to testify.'").

For the first *NAACP* factor, there is no actual prejudice to plaintiff in this matter. Even if there is, both parties are equally prejudiced. Plaintiff has known since June 19 that defendant intended to call an expert to rebut plaintiff's primary expert's opinion.

DOC does not purport to have complied with the Rule 26 disclosure requirement solely because of the June 19 email. But the substance of the email shows that DOC identified the expert by name, listed his credentials, and wrote briefly about the testimony's subject matter. Even if there was no accompanying report disclosing the rebuttal expert's actual opinion, as a rebuttal expert, the opinion was necessarily limited in scope to the opinion offered by plaintiff's expert.

For the second NAACP factor, curing any alleged surprise by plaintiff is simple. Defendant's rebuttal expert accomplished a significant amount of work in a very short time and his report was disclosed to plaintiff on August 25, 2015. A reasonable length of time for review the Linn rebuttal report and an agreed deposition date can cure any surprise. As noted above, plaintiff would also need to agree to a date specific for deposition of his expert since he has yet to be made available.

For the third *NAACP* factor, allowing defendant to present a rebuttal expert would not disrupt this case's progress. No trial date has been set in any of this court's scheduling orders, nor has the time for filing dispositive motions passed. Relevant case law where courts have excluded expert opinions because the testimony would disrupt the progress of the case typically

involve a situation where the expert was first designated at the eleventh hour. That is not the case here. See *NAACP*, 2002 WL 34708021, at *2 (M.D. Fla. May 6, 2002).

Finally, the fourth *NAACP* factor favors defendant. There has been no bad faith in non-disclosure of defendant's expert witness and corresponding report. Many of the delays in defendant's expert disclosure are a result of the burdens imposed by the state's open government framework. There were unexpected and frustrating delays associated with the Department of Management Services' inability to confirm Dr. Linn's required registration in its own MyFloridaMarketplace vendor registration system. Without such confirmation, a vendor simply cannot be paid. In an effort to avoid a situation where an expert could not get paid for services rendered, DOC could not represent that the expert had been retained. This situation was not resolved at the time DOC's rebuttal disclosures were due. Even still, defendant proceeded in good faith to disclose the potential expert and the topics on which he would testify in order to allow the case to move forward.

As a final point, the abruptness with which this motion was filed, and the absence of any preceding discussions between the parties about a proposal to depose Dr. Linn after August 31, further support a conclusion that the remedy requested in this motion is simply inconsistent with any harm associated with the delay in producing the Linn rebuttal report, and as such, entirely inappropriate.

WHEREFORE, the DOC respectfully requests that this court deny all relief requested in plaintiff's Motion to Exclude Defendants' Proposed Rebuttal Experts and to Prohibit Defendants From Offering Expert Testimony.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

/s/ Britt Thomas
Britt Thomas
Chief Assistant Attorney General
Fla. Bar No. 962899
Britt.Thomas@myfloridalegal.com

Elizabeth Teegen
Assistant Attorney General
Fla. Bar No. 833274
Elizabeth.Teegen@myfloridalegal.com
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2015, I served the foregoing via email on Plaintiff's counsel (shawn@sjlawcollective.com, alvinpeters@knology.net, alvinpeters.pc@gmail.com, josh@sjlawcollective.com) and by mail to Richardo Hay.

/s/ Britt Thomas
Britt Thomas